UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| U.S. Bank N.A. | ) | FILE NUMBER: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| Goldenberg & Johnson, PLLC, | ) | |
| Stuart L. Goldenberg, Michael K. Johnson, | ) | |
| GoldenbergLaw, PLLC, and Johnson | ) | |
| Becker, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff U.S. Bank N.A., for its complaint against the Defendants, states and alleges as follows:

## I. THE PARTIES

1.      U. S. Bank N.A. ("U.S. Bank") is a national banking association whose articles of association designate Ohio as the location of its main office.

2.      Defendant Goldenberg & Johnson, PLLC ("G&J") is a Minnesota Professional Limited Liability Company, with its principal of business in Hennepin County, Minnesota.

3.      Defendant Stuart L. Goldenberg ("Goldenberg") is a member of G&J, a resident of Minnesota, and upon information and belief a member of Defendant GoldenbergLaw, PLLC.

4.      Defendant Michael K. Johnson ("Johnson") is a member of G&J, a resident of Minnesota, and upon information and belief a member of Defendant Johnson Becker, PLLC.

5.      Defendant GoldenbergLaw, PLLC ("GoldenbergLaw") is a Minnesota Professional Limited Liability Company, with its principal place of business in Hennepin County Minnesota.

6.      Defendant Johnson Becker, PLLC ("Johnson Becker) is a Minnesota Professional Limited Liability Company, with its principal place of business in Hennepin County, Minnesota.

## II. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter and the parties under 28 U.S.C. §1332(a)(1) based upon diversity of citizenship, as this dispute involves a sum in excess of $75,000 (exclusive of interest and costs), and complete diversity of citizenship exists between Plaintiff and Defendants because the Plaintiff is citizen of Ohio, while all the defendants are citizens of Minnesota.

8.      Venue is appropriate in this Court under 28 U.S.C. § 1391 because the defendants are citizens of Minnesota, the events giving rise to Defendants' liability occurred in this District, and because the property that is, in part, the subject matter of this action is situated in this District.

## III. FACTS GIVING RISE TO DEFENDANTS' LIABILITY

9.      G&J's  business is the practice of law.  As part of its business it sought out loans and lines of credit from U.S. Bank associated with G&J's business needs.

### A.      Case Costs Line.

10.     On or about March 15, 2007 G&J executed and delivered to U.S. Bank a Revolving Credit Agreement for a loan amount of $500,000 (the "Case Costs Revolving Credit Agreement"), and an associated Revolving Credit Note for the principal amount of $500,000, which note had a Maturity Date of May 31, 2009, when the entire principal amount, plus accrued but unpaid interest, were due and payable (the "Case Costs Revolving Credit Note").  The amounts advanced pursuant to this loan were to be used to pay for costs associated with G&J's litigation cases.  Attached as Exhibit A is a true and correct copy of the Case Costs Revolving

2

Credit Agreement and attached as <u>Exhibit B</u> is a true and correct copy of the Case Costs Revolving Credit Note.

11.    The Case Cost Revolving Credit Agreement and Case Cost Revolving Credit Note (sometimes collectively referred to herein as the "Case Cost Line") were amended on multiple occasions, with the last amendment dated June 30, 2010.  The June 30, 2010 Amendment extended the Maturity Date of the Note to June 30, 2011, and increased the principal loan amount to $1,250,000.  A true and correct copy of the June 30, 2010 Amendment to the Revolving Credit Agreement and Case Cost Revolving Credit Note (Case Costs Line) is attached hereto as <u>Exhibit C</u>.

**B.    <u>The Working Capital Line.</u>**

12.    On or about March 15, 2007 G&J executed and delivered to U.S. Bank a Revolving Credit Agreement for a loan amount of $500,000 (the "Working Capital Revolving Credit Agreement"), and an associated Revolving Credit Note for the principal amount of $500,000, which note had a Maturity Date of May 31, 2009, when the entire principal amount, plus accrued but unpaid interest, were due and payable (the "Working Capital Revolving Credit Note").  The amounts advanced pursuant to the loan were to be used to pay for G&J's working capital needs.  Attached as <u>Exhibit D</u> is a true and correct copy of the Working Capital Revolving Credit Agreement and attached as <u>Exhibit E</u> is a true and correct copy of the Working Capital Revolving Credit Note.

13.    The Working Capital Revolving Credit Agreement and Working Capital Revolving Credit Note (sometimes collectively referred to herein as the "Working Capital Line") were amended on multiple occasions, with the last amendment dated June 30, 2010. The June 30, 2010 Amendment extended the Maturity Date of the Working Capital Revolving Credit Note to

June 30, 2011. A true and correct copy of the June 30, 2010 Amendment to the Revolving

Credit Agreement and Note (Working Capital Line) is attached to this Complaint as <u>Exhibit F</u>.

###### C.    Mass Tort Line.

14.    On or about April 29, 2008, G&J executed and delivered to U.S. Bank a

Revolving Credit Agreement for a loan amount of $750,000 (the "Mass Tort Revolving Credit

Agreement"), and an associated Revolving Credit Note for the principal amount of $750,000,

which note had a maturity date of May 31, 2009, when the entire principal amount, plus accrued

but unpaid interest, were due and payable (the "Mass Tort Revolving Credit Note"). The

amounts advanced pursuant to this loan were to be used to pay costs for associated with their

expanding litigation practice. A true and correct copy of the Mass Tort Revolving Credit

Agreement is attached as <u>Exhibit G</u>, and a true and correct copy of the Mass Tort Revolving

Credit Note is attached as <u>Exhibit H</u>.

15.    The Mass Tort Revolving Credit Agreement and Mass Tort Revolving Credit

Note (sometimes collectively referred to herein as the "Mass Tort Line") were amended on

multiple occasions, with the last amendment dated June 30, 2010. The June 30, 2010

Amendment extended the Maturity Date to June 30, 2011, and increased the loan amount to

$1,700,000. A true and correct copy of the June 30, 2010 Amendment to the Revolving Credit

Agreement and Note (Mass Tort Line) is attached as <u>Exhibit I</u>.

###### D.    Guaranties.

16.    The  obligations of G&J under the Case Cost Line, Working Capital Line and

Mass Tort Line were guaranteed by the owners of G&J, Defendants Stewart L. Goldenberg and

Michael K. Johnson, in continuing Guaranties dated May 31, 2005 and March 15, 2007, and

Reaffirmation of Guaranties, dated March 15, 2007 and April 29, 2008, which provided for

4

absolute, joint and several guarantees for prompt payment of all obligations owed by G&J to

U.S. Bank.  True and correct copies of the Goldenberg Guaranties and Reaffirmations are

attached as <u>Exhibit J</u>, and true and correct copies of the Johnson Guaranties and Reaffirmations

are attached as <u>Exhibit K</u>.

<strong>E.      Security Agreement.</strong>

17.      The Case Cost Line, Working Capital Line and Mass Tort Line were secured by a

Business Security Agreement dated March 15, 2007 (the "Security Agreement"), which granted

U.S. Bank a security interest in, among other things, all accounts, instruments, documents,

chattel paper, general intangibles, contract rights, investment property, certificates of deposit,

deposited accounts, and letter-of-credit rights, all inventory and all equipment of G&J (the

"Collateral").  A true and correct copy of the Business Security Agreement is attached as

Exhibit L.

<strong>F.      Default.</strong>

18.      On June 30, 2011, the amounts due under the Case Costs, Working Capital and

Mass Tort Lines matured, and all principal amounts and accrued but unpaid interest under those

loans became due and payable.  As of September 30, 2011, the Case Cost Line had an

outstanding principal balance of $1,250,000, the Working Capital Line  had an outstanding

principal balance of $500,000, and the Mass Tort Line had an outstanding principal balance of

$1,395,000,for a total principal indebtedness to U.S. Bank of $3,145,000, plus U.S. Bank is owed

additional amounts on each Line in the form of  interest, late fees,  penalties, expenses, and costs

of collection, all of which continue to increase as time passes.

5

19.     As of September 30, 2011, no payments had been made on these outstanding amounts, despite the fact that the obligations became due automatically on the maturity date of June 30, 2011, and despite the fact that U.S. Bank had demanded payment in full.

20.     Accordingly, there is a payment default under each of the Revolving Credit Agreements and Revolving Credit Notes.

21.     In addition, and pursuant to the parties' contractual agreements, U.S. Bank is entitled to recover from G&J all costs of collection, including reasonable attorneys' fees, in its efforts to collect the amounts owed.

22.     The Guarantors, Stuart Goldenberg and Michael Johnson, have not paid the obligations of G&J that are now due and owing, and therefore the Goldenberg and Johnson are in default of their guarantee obligations.

### G.     G&J's Transfer of Assets to Defendants Goldenberg, Johnson, GoldenbergLaw and Johnson Becker

23.     Upon information and belief, Defendant GoldenbergLaw is owned by Defendant Goldenberg and Defendant Johnson Becker is owned, in part, by Defendant Johnson.

24.     G&J in conjunction with Defendants Goldenberg and Johnson, upon information and belief, caused assets of G&J to be transferred to Defendants Goldenberg, Johnson, GoldenbergLaw and/or Johnson Becker.  Those transfers were not for reasonably equivalent value, were made at a time when G&J was insolvent or it was made insolvent immediately after the transfers, and therefore the transfers constitute fraudulent transfers.

25.     Furthermore, both GoldenbergLaw and Johnson Becker have purported to grant lenders security interests in all of their assets, including the assets transferred to them by G&J.

26.     Given the transfer by G&J of their assets to GoldenbergLaw and Johnson Becker, U.S. Bank's collateral is in significant risk of being depleted or dissipated.  U.S. Bank seeks,

6

therefore, the appointment of a receiver to marshal the assets of G&J and oversee them until such time as the debt owed by G&J, and the Guarantors, are paid in full.

## COUNT I
## BREACH OF CONTRACT – PAYMENT DEFAULT
### (Against G&J)

27.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

28.     Pursuant to the Revolving Credit Agreements and the Revolving Credit Notes, Defendant G&J was obligated to pay U.S. Bank all amounts when due under the Case Cost Line, Working Capital Line and Mass Tort Line on or before June 30, 2011.

29.     As of September 30, 2011, the principal amount owed by G&J is $3,145,000. G&J's failure to pay constitutes a breach of contract, which has damaged U.S. Bank in the amount of $3,145,000, plus interest, late fees,  penalties, expenses, and costs of collection, including reasonable attorneys' fees.

## COUNT II
## BREACH OF CONTRACT – TRANSFER OF COLLATERAL
### (Against G&J)

30.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

31.     The Revolving Credit Agreements and the Business Security Agreement prohibited G&J from transferring, dissipating, or allowing liens to be filed against the assets of G&J.  The assets of G&J, including, but not limited to, accounts receivable, attorneys' liens and other rights of payment, were, upon information and belief,  transferred by G&J to GoldenbergLaw, Johnson Becker, Goldenberg and/or Johnson without permission.

32.     Further, GoldenbergLaw (owned by Goldenberg) and Johnson Becker (owned, in part, by Johnson) have purported to grant other lenders an interest against the assets of those entities, which include the G&J assets that were previously and wrongfully transferred to them.

33.     G&J's transfer of its assets constitutes a breach of contract, for which U.S. Bank has been damaged in an amount to be proven at trial.

**COUNT III**
**BREACH OF CONTRACT – GUARANTIES**
**(Against Goldenberg and Johnson)**

34.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

35.     The Guaranties executed by Defendants Goldenberg and Johnson constitute valid contracts, requiring each of them to jointly and severally pay all outstanding obligations of G&J owed to U.S. Bank.

36.     G&J has failed to pay all amounts owed under the Case Cost Line, Working Capital Line, and the Mass Tort Line, and currently there is outstanding $3,145,000, plus interest, late fees, penalties, expenses, and costs of collection, including reasonable attorney's fees.

37.     Despite due demand, Defendants Goldenberg and Johnson have failed to pay G&J's obligations, and therefore have breached their obligations under the Guaranties.

38.     Defendants Goldenberg and Johnson's breach of the Guaranties have damaged U.S. Bank in the amount of 3,145,000, plus interest, late fees, penalties, expenses, and costs of collection, including reasonable attorney's fees.

GP:3047517 v1

## COUNT IV
## APPOINTMENT OF A RECEIVER
### (Against G&J)

39.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

40.     G&J, by transferring all of its assets to third parties, has put U.S. Bank's collateral at risk.

41.     U.S. Bank is entitled to the immediate marshaling of G&J's assets, and oversight of an independent receiver to assure that such assets remain available to satisfy G&J's obligations to U.S. Bank.

42.     Given that G&J (owned by Defendants Goldenberg and Johnson) have transferred the assets subject to U.S. Bank's Security Agreement without reasonably equivalent value to entities owned by Goldenberg and/or Johnson, (or to Goldenberg and Johnson individually) U.S. Bank is fearful of further transfer, dissipation or dilution of its rights in the collateral.

43.     Pursuant to Minnesota law, including, but not limited to, Minnesota Statute Section 576.01, U.S. Bank is entitled to the appointment of a receiver of G&J in order to marshal G&J's assets, and to oversee their orderly liquidation to satisfy, in whole or in part, G&J's debt to U.S. Bank.

44.     The Court should issue such appropriate orders to ensure that the Receiver has the authority and power to obtain G&J's assets from Goldenberg, Johnson, GoldenbergLaw, Johnson Becker and/or other transferees.

45.     Accordingly, U.S. Bank seeks an order appointing a receiver for G&J.

GP:3047517 v1

## COUNT V
## FRAUDULENT TRANSFER
**(Against Goldenberg, Johnson, GoldenbergLaw, and Johnson Becker)**

46.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

47.     U.S. Bank had a valid and recorded security interest in all of the assets of G&J.

48.     Upon information and belief, G&J has transferred its assets to Goldenberg, Johnson, GoldenbergLaw and/or Johnson Becker.

49.     G&J did not receive reasonably equivalent value for the assets transferred to Goldenberg, Johnson, GoldenbergLaw and/or Johnson Becker.

50.     The transfer occurred at a time when G&J was insolvent or the transfers themselves made G&J insolvent.

51.     Upon information and belief, G&J transferred its assets with actual intent to hinder, delay or defraud its creditors, including U.S. Bank, as those terms are defined and interpreted under Minnesota Statute Section 513.44.

52.     The transfer of assets, therefore, was fraudulent, and as a creditor of G&J, U.S. Bank is authorized to seek recovery of the assets and any of its proceeds because of the fraudulent transfers.

53.     U.S. Bank requests that the transfers should be declared fraudulent transfers and judgment should be entered in U.S. Bank's favor and against Goldenberg, Johnson, GoldenbergLaw and Johnson Becker for the full value of the assets transferred to them by G&J, or such other amount as the Court deems just.

10

## COUNT VI
## CONVERSION
**(Against Goldenberg, Johnson, GoldenbergLaw, and Johnson Becker)**

54.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

55.     Upon information and belief, Goldenberg, Johnson, GoldenbergLaw and/or Johnson Becker currently have possession and control over G&J's assets.

56.     Pursuant to G&J's agreements with U.S. Bank, such assets should have remained with G&J, and the actions of Goldenberg, Johnson, GoldenbergLaw and Johnson Becker constitute conversion of those assets, for which U.S. Bank has been directly damaged.

57.     U.S. Bank seeks judgment against Goldenberg, Johnson, GoldenbergLaw and Johnson Becker for the full value of assets that each of them possesses, or such other amount as the Court deems just.

## COUNT VII
## REPLEVIN OF COLLATERAL
**(Against all Defendants)**

57.     U.S. Bank refers to and relies upon, as if fully set forth by this reference, all previous paragraphs of this Complaint.

58.     Under the terms of the Security Agreement, all assets of G&J were pledged as Collateral for G&J's obligations under the three Revolving Credit Agreements and three Revolving Credit Notes.

59.     G&J has defaulted under the terms of the Revolving Credit Agreements and Revolving Credit Notes and related documents.

60.     As a result of G&J's defaults, U.S. Bank is entitle to an order under Chapter 565 of the Minnesota Statutes granting it possession of the G&J assets pledged as Collateral, ordering

11

the Defendants to deliver the Collateral to U.S. Bank, and allowing U.S. Bank to dispose of the

Collateral and apply the proceeds in accordance with Minnesota, and to take all other actions

available to secured creditors under the law of Minnesota.

61.     U.S. Bank is also entitled to immediate possession of the Collateral.

62.     U.S. Bank is also entitled to enter the premises of G&J, GoldenbergLaw, and

Johnson Becker and secure the premises for the purpose of ensuring control over the Collateral.

WHEREFORE, U.S. Bank N.A. respectfully requests that judgment be entered as

follows:

A.      A joint and several judgment in the amount of $3,145,000, plus interest, late fees,

penalties, expenses, costs of collection, including reasonable attorney's fees against Goldenberg

& Johnson PLLC, Stuart L. Goldenberg and Michael K. Johnson;

B.      Judgment in an amount to be proven at trial against GoldenbergLaw PLLC;

C.      Judgment in an amount to be proven at trial against Johnson Becker PLLC;

D.      An appointment of a receiver for Goldenberg & Johnson PLLC to marshal,

maintain and/or liquidate the assets of Goldenberg & Johnson PLLC in order to satisfy the debt

owed to U.S. Bank N.A.;

E.      Such orders as are necessary to ensure the Receiver has the authority and power to

obtain Goldenberg & Johnson PLLC assets from Stuart L. Goldenberg, Michael K. Johnson,

GoldenbergLaw, PLLC, Johnson Becker, PLLC; and/or other transferees;

F.      An order of replevin:  1) granting U.S. Bank possession of the Collateral; 2)

requiring the Defendants to deliver the Collateral to U.S. Bank; 3) allowing U.S. Bank to enter

the premises of G&J, GoldenbergLaw, and Johnson Becker to secure the premises in order to

ensure control over the Collateral; 4) granting U.S. Bank the right to immediate possession of the

Collateral; 5) allowing U.S. Bank to dispose of the Collateral and apply the proceeds in

accordance with Minnesota law; and 6) to take all other others available to secured creditors

under the law of Minnesota; and

      G.     Such other relief as the Court deems just.

Dated:  October  4 , 2011.

                  GRAY, PLANT, MOOTY,
                    MOOTY & BENNETT, P.A.


                  By     /s/ Charles K. Maier
                    Charles K. Maier (MN 230315)
                  500 IDS Center
                  80 South Eighth Street
                  Minneapolis, Minnesota  55402
                  Telephone:  (612) 632-3242
                  Fax:  (612) 632-4242

                  ATTORNEYS FOR PLAINTIFF

GP:3047517 v1